THE ABRAM F. SKIDMORE. THE CRESCENT. THE L. T. WHITMORE.

(District Court, S. D. New York. January 22, 1908.)

COLLISION—TUGS WITH TOWS MEETING—NARROW CHANNEL—RULE.

 A tug with a scow in tow alongside *held* solely in fault for a collision in East river near Riker's Island between the scow and a schooner in tow of a meeting tug on a hawser, on the ground that she suddenly changed her course to port, and also that she was on the port side of the channel, in violation of the narrow-channel rule.

In Admiralty. Suit for collision.

MacFarland, Taylor & Costello, for Haskell and The L. T. Whitmore.

Hyland & Zabriskie, for The Abram F. Skidmore.

James J. Macklin, for The Crescent.

William J. Cleary, for William E. Cleary.

ADAMS, District Judge. These actions arose out of a collision which occurred about 2 o'clock p. m. on the 5th day of September, 1906, in the East River in the vicinity of Riker's Island, between the schooner L. T. Whitmore bound west, with her sails furled, in tow of the tug Crescent on a hawser of about 50 fathoms in length, and the scow Ina, belonging to William E. Cleary, bound east, in tow on the port side of the tug Abram P. Skidmore. The tide was ebb,

running west about 2 miles an hour in the center of the channel and about a half of a mile on the north shore. It was somewhat stronger on the south shore than the north shore.

The first action was brought by the master and part owner of the Whitmore, who alleged that she was directly behind the Crescent, that neither she nor the Crescent changed her course, and the Skidmore and the Ina came somewhat diagonally toward the schooner and collided with her bowsprit crushing in the schooner's port bow, etc., through improper navigation on the part of the Skidmore. The Skidmore answered the libel denying that there was any fault on her part and alleging that she and tow were proceeding through the channel about 100 feet from its northerly edge and saw the Crescent approaching about 1½ to 2 points on the Skidmore's starboard bow and kept that course until she was a short distance away when she changed to pass to the port side of the Skidmore and in attempting to do so, brought the schooner's bow, partly through the latter's fault in failing to follow the Crescent, in contact with the bow of the Ina about two-thirds of the way to the port side. The Skidmore also filed a petition to bring the Crescent into the action. The Crescent duly answered the libel and petition, denying any fault on her part and alleging that the collision was caused solely through the fault of the Skidmore in suddenly changing her course toward the Whitmore so as to bring about the contact and also charged the Skidmore with fault in navigating upon the wrong side of the channel. Cleary then brought his action against all of the vessels to recover the damages to the Ina, alleging that the schooner suddenly ran into the Ina and that all the vessels were in fault, the tugs for not giving signals, etc., and the Whitmore for not following the Crescent. The allegations of the libel were duly denied by the other vessels. Other faults were alleged by all of the vessels but the litigation has principally proceeded on the question as to which of the tugs and tows, changed her course, and the remaining allegations of neglect may be disregarded.

The Whitmore, from an eastern port with a cargo of lumber under and on deck was bound to 65th Street, South Brooklyn. She had stopped at City Island early in the morning of the day of the collision. Her crew was then paid off excepting the master, the mate and the cook, who remained on board. After being taken in tow by the Crescent, the mate went to the wheel, the master was below, and the cook was on top of some of the lumber, looking around. He was not strictly doing duty as lookout but he had a good view in all directions. The mate's view ahead was obscured by the deck load.

The Ina, a scow about 100 feet long, was taken in tow on the port side of the Skidmore at Potts Cove, Astoria, bound for Whitestone, Long Island. She had a square bow which was about 30 feet ahead of the bow of the tug. The tug was about 75 feet long. The tow left Potts Cove about 12:30 p. m. and proceeded through the channel between North Brother's Island and South Brother's Island and thence on the north side of the river, said by her witnesses about 100 feet from the northerly side of the channel.

As stated above, it is claimed by the Skidmore that while she was navigating on the northerly side of the channel, the Crescent and schooner approached on her starboard side and suddenly changed to cross her bow, while the Crescent and schooner claim that the vessels approached each other so as to pass port to port and would have cleared by 100 or 150 feet, had not the Skidmore suddenly changed to the port.

The weight of the testimony is decidedly with the contention of the Crescent, supported as it is not only by statements from those on the schooner but by two disinterested witnesses from the Night Hawk, a small gasolene launch, which followed and overtook the Skidmore, observing what she did. They said that the vessels were approaching, the Crescent and the schooner being nearer to the northerly side of the channel, so as to pass each other safely, clear water being seen between them, and they then heard the crash of the collision, and saw the schooner and scow in collision, the latter then heading to the northerly side of the channel, which their testimony indicates was brought about by a change to the northward. Some of the witnesses from the Crescent said that in passing the Skidmore, they observed that the steersman was leaning over the wheel as though he was asleep. It was argued therefrom that the Skidmore being of very weak power was turned to port by the strength of the current, which she was trying to overcome. There is some force in the argument but it is not necessary to adopt it as the other evidence is sufficient to support the Crescent's contention.

There is another feature of the case which would condemn the Skidmore, that is navigating on the wrong side of a narrow channel. While she was not within 100 feet of the northerly edge, as claimed by herself, she was undoubtedly on the port side of mid-channel and thereby violated Rule 25, which provides that "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fair way or mid-channel which lies on the starboard side of such vessel." Her power was not sufficient to enable her to make much, if any, progress with her tow in stemming the strength of the adverse current, hence she sought a part of the channel where she would not meet its full power, which was on the northerly side. In this particular she was also in fault.

The faults of the Skidmore are so marked and so plainly account for the collision that it is unnecessary to consider the further details of the navigation of the other vessels.

There will be a decree for the libellants Haskell and Cleary against the Skidmore, with orders of reference. The libels against the Crescent and the Whitmore will be dismissed.